UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE TRAVELERS INDEMNITY COMPANY,                Action No.:

                       Plaintiff,

   -against-                                                **COMPLAINT**

EVEREST NATIONAL INSURANCE COMPANY,

                       Defendant.
-------------------------------------------------------------------X

      Plaintiff THE TRAVELERS INDEMNITY COMPANY ("Travelers"), by its attorneys, Usery & Associates, as and for its Complaint against defendant EVEREST NATIONAL INSURANCE COMPANY ("Everest"), alleges as follows:

## JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

    2.    At all times hereinafter mentioned, Travelers was, and still is, a corporation organized pursuant to the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

    3.    At all times hereinafter mentioned, Travelers was, and still is, an insurance company duly authorized to conduct business in the State of New York.

    4.    Upon information and belief, at all times hereinafter mentioned, Everest was, and still is, a corporation organized pursuant to the laws of the State of Delaware, with its principal place of business in Warren, New Jersey.

5. Upon information and belief, at all times hereinafter mentioned, Everest was, and still is, an insurance company duly authorized to conduct business in the State of New York.

6. Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

**A.    The Underlying Action**

7. On or about May 21, 2021, Thomas Jelcic ("Jelcic") commenced a lawsuit, captioned *Thomas Jelcic v. The City of New York, Metropolitan Transportation Authority, New York City Transit, Prismatic Development Corporation*, Index No. 151005/2021, in the Supreme Court of the State of New York, County of Richmond ("Action 1"), by filing a Summons and Verified Complaint.

8. On or about November 10, 2023, Jelcic commenced a second lawsuit, captioned *Thomas Jelcic v. Permadur Industries, Inc. t/a Sissco Material Handling Equipment*, Index No. 152062/2023, also in the Supreme Court of the State of New York, County of Richmond ("Action 2"), by filing a Summons and Verified Complaint.

9. By so-ordered stipulation entered January 25, 2024, Action 1 and Action 2 were consolidated for all purposes under Action 1's Index Number, such that the first-party caption of the consolidated action became *Thomas Jelcic v. The City of New York, Metropolitan Transportation Authority, New York City Transit, Prismatic Development Corporation, and Permadur Industries, Inc. t/a Sissco Material Handling Equipment* (the "Underlying Action").

10. Jelcic, in the Underlying Action, alleges that on January 15, 2021, the City of New York (the "City"), Metropolitan Transportation Authority ("MTA"), and New York City Transit ("NYC Transit") (collectively, the "City Entities") owned, leased, operated, maintained,

2

controlled, and managed the premises located at 845 Bay Street, Staten Island, New York (the "Premises").

11. Jelcic, in the Underlying Action, alleges that on January 15, 2021, Prismatic Development Corporation ("Prismatic") was the general contractor for the construction, renovation, excavation, demolition, repair, inspection, cleaning and/or alteration of the Premises (the "Project").

12. Jelcic, in the Underlying Action, alleges that on January 15, 2021, Permadur Industries, Inc. t/a Sissco Material Handling Equipment ("Sissco") was performing construction, renovation, excavation, demolition, repair, inspection, cleaning and/or alteration work on the Project at the Premises.

13. Jelcic, in the Underlying Action, alleges that on January 15, 2021, he was performing work on the Project as an employee of Mate Matura & Sons Inc. ("Matura"), a contractor who had been retained to perform work on the Project.

14. Jelcic, in the Underlying Action, alleges that on January 15, 2021, he was injured while working in the course of his employment with Matura on the Project when he tripped and fell as the result of a dangerous and/or defective condition at the Premises (the "Accident").

15. Jelcic, in the Underlying Action, alleges that the Accident occurred due to the negligence of, *inter alia*, Prismatic and Sissco in the operation, direction, supervision, possession, control, construction, rehabilitation and/or alteration of the Premises, and in failing to provide Jelcic with a safe place to work.

16. Jelcic, in the Underlying Action, asserts causes of action against all defendants sounding in negligence, violation of N.Y. Labor Law §§ 200, 240, and 241(6), and violation of Rule 23 of the Industrial Code of the State of New York.

17. On or about February 15, 2024, the City Entities and Prismatic commenced a third-party action against Sissco by filing a Verified Third Third-Party Complaint (the "Third-Party Complaint").

18. The City Entities and Prismatic, in the Third-Party Complaint, allege that on December 30, 2016, the MTA and NYC Transit retained Prismatic by written contract to provide services on the Project related to the design and construction of a maintenance shop for the MTA.

19. The City Entities and Prismatic, in the Third-Party Complaint, allege that on March 28, 2017, Prismatic retained Sissco by written subcontract agreement to furnish and install certain mechanical equipment at the Premises for the Project.

20. The City Entities and Prismatic, in the Third-Party Complaint, allege that on the date of the Accident, Sissco was performing work on the Project pursuant to its subcontract with Prismatic.

21. The City Entities and Prismatic, in the Third-Party Complaint, allege that any injuries sustained by Jelcic as a result of the Accident were "caused in whole or in part by the recklessness, carelessness, negligence and/or other culpability of Sissco . . . in the supervision and control of its work site by virtue of and/or employees by virtue of its failure to maintain safe working area(s), safety devices, tools and/or equipment, and/or other protection to other workers at the work site; its failure to properly instruct its employees on safe work practices; and/or other acts and/or omissions by SISSCO and/or its agents, servants, subcontractors, sub-subcontractors and/or employees that caused and/or contributed to Plaintiff's alleged damages and/or injuries."

22. The City Entities and Prismatic, in the Third-Party Complaint, assert causes of action against Sissco for Contribution, Common Law Indemnification, Contractual Indemnification, and Breach of Contract.

B.   **The Prime Contract**

23.   By written Contract No. C-82004 dated December 30, 2016, NYC Transit, acting for itself and on behalf of the MTA, retained Prismatic as General Contractor to perform the design-build services for the Project, identified as the Design and Construction of a maintenance shop known as the "Clifton Car Maintenance Shop" at the Premises (the "Prime Contract").

C.   **The Sissco Subcontract**

24.   By written Subcontract Agreement No. S-019 dated October 9, 2017 and revised February 13, 2018, Prismatic retained Sissco to provide all necessary labor, materials, equipment and services required for the Mechanical and Shop Equipment work on the Project (the "Sissco Subcontract").

25.   The Sissco Subcontract identifies Sissco as "Subcontractor", was signed by Sissco on February 14, 2018, was signed by Prismatic on February 26, 2018, and was initialed on each page by both Sissco and Prismatic.

26.   The Sissco Subcontract provides, in part, as follows concerning Sissco's insurance procurement requirements:

> 19. INSURANCE POLICIES:
>    A. The Subcontractor shall take out pay for and carry policies of contingent liability insurance and ***general liability insurance which shall be in amounts and form as listed in Article B below*** in companies approved by and satisfactory to the Contractor, and the Subcontractor shall comply in all respects with the laws of the state where the work hereunder is to be performed, relating to compensation for accidental injuries or death suffered in the course of employment. All insurance policies shall be comprehensive in form and so drawn as to ***fully protect both parties hereto***. . . . Further before work is commenced the Subcontractor shall deposit such policies of insurance with the Contractor, and shall furnish the Contractor with Certificates of Insurance from all such insurance companies, certifying that they have respectively issued policies in the value required by the Contractor, that they ***acknowledge that the policies so issued cover the Subcontractor, as well as the***

5

*__Contractor as required by this Agreement and specifically naming Prismatic Development Corporation as an insured on the policy__* and that they shall not cancel or change same without first giving the Contractor ten (10) days prior notice by registered mall of intention to cancel. . . .

    B. Insurance Requirements

The Subcontractor shall purchase and maintain minimum insurance of the following types of coverage and limits of liability:

    1) *__Commercial General Liability (CGL) with limits of Insurance of not less than $2,000,000 each occurrence__* and $4,000,000 Annual Aggregate.
        a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project. Aggregate is applicable separately to this project.
        b) CGL coverage shall be written on ISO Occurrence form CG 00 01 (10/01 ED) or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.
        c) *__General Contractor, Owner and all other parties required of the General Contractor, shall be included as insureds on the CGL__*, using ISO Additional Insured Endorsement CG 20 10 (07/04 ED) or CG 20 33 (07/04 ED) and CG 20 37 (07/04 ED) or an endorsement providing equivalent coverage to the additional insureds. *__This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as Primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured__*.
        d) Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work. (Emphasis supplied.)

    27.    Upon information and belief, Sissco complied with its obligations under the

Sissco Subcontract, in part, by obtaining general liability insurance from Everest.

D.  **The Everest Policy**

28. Everest issued Commercial General Liability ("CGL") policy, No. CF4GL00063211, to Sissco as a Named Insured, with a policy period from January 12, 2021 to March 12, 2022, and an Each Occurrence Limit of $1 million (the "Everest Policy").

29. Under the Everest Policy, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy," and therefore refer to Sissco.

30. The Everest Policy includes an endorsement, Form No. CG 20 10 12 19, entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization," which provides, in relevant part, as follows:

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Any person or organization that entered into a written contract with the Named Insured requiring such person(s) or organization(s) to be named as an additional insured with respect to the Named Insured's performance of operations at any location on behalf of such person(s) or organization(s). | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" . . . **caused, in whole or in part, by**:

1. **Your acts or omissions**; or

2. The acts or omissions of those acting on your behalf;

>    ***in the performance of your ongoing operations for the additional insured(s)*** at the location(s) designated above.
>    (Emphasis supplied; bold in original.)

31. The Everest Policy also includes an endorsement, Form CG 20 33 12 19, entitled "Additional Insured – Owners, Lessees Or Contractors – Automatic Status When Required In A Written Construction Agreement With You," which provides, in relevant part, as follows:

>    **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations ***when you and such person or organization have agreed in writing*** in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury". . . ***caused, in whole or in part, by***:
>
>    **1.** ***Your acts or omissions***; or
>
>    **2.** The acts or omissions of those acting on your behalf;
>
>    ***in the performance of your ongoing operations for the additional insured***. (Emphasis supplied; bold in original.)

32. The Everest Policy also includes an endorsement, Form CG 20 01 12 19- "Primary and Noncontributory – Other Insurance Condition," which provides, in relevant part, as follows:

>    The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
>    **Primary And Noncontributory Insurance**
>
>    This insurance ***is primary to and will not seek contribution from any other insurance available to an additional insured*** under your policy provided that:
>
>    **(1)** The ***additional insured is a Named Insured*** under such other insurance; and
>
>    **(2)** ***You have agreed in writing in a contract or agreement that this insurance would be primary*** and would not seek

8

> contribution from any other insurance available to the additional insured. (Emphasis supplied; bold in original.)

33. Jelcic, in the Underlying Action, alleges a claim for which Prismatic qualifies as an additional insured under the Everest Policy.

34. The Everest Policy provides primary, noncontributory coverage for Prismatic for the Underlying Action.

### E. The Travelers Policy

35. Travelers issued Commercial Insurance policy, No. VTC2K-CO-7K029380-IND-20, to Prismatic as the first Named Insured, with a policy period from August 4, 2020 to August 4, 2021, including a CGL Part with an Each Occurrence Limit of $3 million (the "Travelers Policy").

36. The Travelers Policy has an applicable excess "Other Insurance" provision for Prismatic that provides, in relevant part, that the Travelers Policy is "excess over. . . [a]ny of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance."

### F. The Tenders and Responses

37. By letter dated February 19, 2024, Travelers tendered the Underlying Action to Everest and Sissco on behalf of Prismatic.

38. By letter dated May 13, 2024, Travelers re-tendered the Underlying Action to Everest and Sissco on behalf of Prismatic.

39. By email dated July 2, 2024, Travelers re-tendered the Underlying Action to Everest via Sedgwick Claims Management Services, Inc. ("Sedgwick"), Everest's third-party administrator, on behalf of Prismatic.

40. By email dated October 1, 2024, Travelers again re-tendered the Underlying Action to Everest via Sedgwick, on behalf of Prismatic.

41. By email dated December 5, 2024, Travelers again re-tendered the Underlying Action to Everest via Sedgwick, on behalf of Prismatic.

42. By email dated December 5, 2024, Sedgwick responded to Travelers' tenders for the first time, stating "we feel it is premature to address same, given that facts of loss are still being developed. As such, we take no position at this time."

43. Everest has never denied coverage for Prismatic under the Everest Policy for the claims alleged in the Underlying Action.

44. Sedgwick, on Everest's behalf, has never denied coverage for Prismatic under the Everest Policy for the claims alleged in the Underlying Action.

45. Everest has failed and refused to accept Travelers' tender of the Underlying Action on behalf of Prismatic.

46. As a result of Everest's breach of its duty to defend, Travelers has been forced to drop down and provide a defense to Prismatic for the Underlying Action.

47. Based on the "Other Insurance" provision in the Travelers Policy, the coverage provided by Travelers to Prismatic is excess to the coverage provided by the Everest Policy.

**AS AND FOR A FIRST CLAIM FOR RELIEF**

48. Travelers repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "47" of this Complaint as if more fully set forth herein.

49. Although duly and properly demanded, Everest has failed and refused to provide the primary defense to Prismatic for the claims alleged in the Underlying Action.

50. Everest has, to date, wrongfully declined to provide coverage for Prismatic for the Underlying Action.

51. Travelers seeks a determination of its rights with regard to the Everest Policy, including a declaratory judgment that Everest is required to defend and indemnify Prismatic as an additional insured under the Everest Policy for the Underlying Action; that Everest's coverage for Prismatic applies on a primary basis; and that Travelers' coverage for Prismatic in the Underlying Action is excess to proper exhaustion and full payment of the Everest Policy.

52. Travelers has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

53. Travelers repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "52" of this Complaint as if more fully set forth herein.

54. Everest failed and refused to acknowledge its primary coverage obligation and reimburse Travelers for costs incurred to defend Prismatic for the Underlying Action.

55. As a result of Everest's failure to acknowledge that it owes a primary duty to defend Prismatic, Travelers has been required to pay for Prismatic's defense for the Underlying Action.

56. As a result of Everest's failure to acknowledge its primary duty to defend and indemnify Prismatic, Travelers has incurred substantial attorneys' fees and other costs for the defense of Prismatic in the Underlying Action.

57. As a result of the foregoing, Travelers is entitled to a money judgment against Everest in an amount equal to what it has incurred and will incur to defend Prismatic in the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiff THE TRAVELERS INDEMNITY COMPANY demands

judgment as follows:

1. On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff THE TRAVELERS INDEMNITY COMPANY and defendant EVEREST NATIONAL INSURANCE COMPANY with respect to their liability insurance coverage obligations for Prismatic for the Underlying Action, including a declaratory judgment that Everest is required to defend and indemnify Prismatic for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary basis before coverage under the Travelers Policy applies to Prismatic for the Underlying Action;

2. On the second claim for relief, a money judgment in favor of plaintiff THE TRAVELERS INDEMNITY COMPANY and against defendant EVEREST NATIONAL INSURANCE COMPANY, in an amount to be determined by the Court; and

3. Granting plaintiff THE TRAVELERS INDEMNITY COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 10, 2025

**USERY & ASSOCIATES**

By: */s/ David R. Shyer*
David R. Shyer (DS-6506)
*Attorneys for Plaintiff*
*The Travelers Indemnity Company*
(917) 778-6324
dshyer@travelers.com

Please address all correspondence to:
P.O. Box 2996
Hartford, CT 06104-2996[1]

---

[1] Physical Address: 485 Lexington Avenue, 6th Floor, New York, NY 10017